Webster v. Camp.

No. 22,553.

*In re* Estate of MARY J. CAMP, Deceased (HELEN L. WEBSTER, Claimant, *Appellee,* v. MAHLON CAMP, *Appellant*).

### SYLLABUS BY THE COURT.

1. WRITTEN CONTRACT—*Promise to Pay for Past and Future Services— Sufficient Consideration—Contract Valid.* A contract in which a sick and helpless old lady agrees to pay $11,000 to a young woman for service rendered in the past and to be rendered in the future during the life of the old lady, has a sufficient consideration and is not unreasonable, unconscionable, or void, where it had been understood between the parties that the past service should be paid for, although the old lady provided a home for and raised the young woman.

2. SAME. A contract to pay a certain sum for service may be proved and allowed as a claim against the estate of the party contracting to pay, and may be collected from the estate in the same manner as any other claim of the same class, although the payment of the claim may exhaust all the assets of the estate.

Appeal from Linn district court; EDWARD C. GATES, judge. Opinion filed July 10, 1920. Affirmed.

*B. C. Garrison,* and *John O. Morse,* both of Mound City, for the appellant.

*John A. Hall,* of Pleasanton, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: Mahlon Camp, the surviving husband of Mary J. Camp, deceased, appeals from a judgment in favor of the plaintiff against the estate of Mary J. Camp for $11,286. The action was tried without a jury, and the court made special findings of fact as follows:

"1. That Mary J. Camp died in Pleasanton, Kansas, July 23, 1918, and at the time of her death was the owner of property situated in said county of the value of about $13,000.

"2. That the claimant herein, Helen L. Webster, was taken when a very small child by the decedent, Mary J. Camp, and made her home with the said Mary J. Camp until her death on July 23, 1918; that the said Mary J. Camp provided a home for the said Helen L. Webster, and the said Helen L. Webster rendered such help as she could in the home and they, at all times, lived together as mother and daughter and treated each other as mother and daughter; that said Helen L. Webster was

never legally adopted by said Mary J. Camp and had not reached her majority at the time of the death of said Mary J. Camp; that while said Helen L. Webster lived with said Mary J. Camp, the said Mary J. Camp was sick a considerable portion of the time and Helen L. Webster stayed with and took care of her, and consequently was deprived of the schooling she should have had during the time she lived with said Mary J. Camp.

"3. That in April, 1909, Mary J. Camp married Mahlon Camp and he was her lawful husband at the date of her death, but the said Mahlon Camp and Mary J. Camp separated about four years ago and since separation, said Mahlon Camp has lived outside of the state of Kansas, and that from their marriage in 1909 until about four years ago said parties lived together in Linn county, Kansas.

"4. That there was an understanding between said Mary J. Camp and Helen L. Webster that Mary J. Camp was to pay said Helen L. Webster for her services and that Mary J. Camp told a number of her friends and neighbors prior to the making of the contract hereinafter referred to that she could never repay Helen for the care she had taken of her.

"5. That on the 4th day of July, 1918, and during the last sickness of Mary J. Camp, the following contract was entered into between Mary J. Camp and Helen L. Webster, a copy of which is attached hereto and marked Exhibit 'A' and made a part of these findings of fact.

"6. That said contract was entered into in good faith by both parties to the same and at the time Mary J. Camp executed said contract marked Exhibit 'A' she was of sound mind and knew and fully appreciated what she was doing and that there was no undue influence used by the said Helen L. Webster or any one else to procure the execution of said contract and that the services mentioned in said contract, that had been performed and were to be performed by Helen L. Webster, were, in fact, performed by her."

On these findings of fact the court made the following conclusions of law:

"1. That said contract entered into between Mary J. Camp and Helen L. Webster, dated the 4th day of July, 1918, was and is a valid and legal contract.

"2. That Helen L. Webster is entitled, under said contract, to an allowance of her claim against the estate of Mary J. Camp in the sum of eleven thousand dollars, with interest thereon at the rate of six per cent per annum from the 23d day of July, 1918, the date of the death of Mary J. Camp, and that said claim should be allowed by the Probate Court of Linn county, Kansas, for said amount as a fifth-class claim."

The contract referred to in the findings of fact reads:

"This agreement, made this 4th day of July, 1918, by and between Mary J. Camp, party of the first part, and Helen L. Webster, party of the second part.

"Witnesseth, that, whereas the second party has for many years cared for and nursed the said first party, and,　　　　．

"Whereas, first party is now helpless and in great need for some one to care for and nurse her, and to provide for her wants, and, whereas, it has been agreed between the parties hereto that eleven thousand dollars ($11,000.00) is a reasonable compensation for the services rendered to the first party by the second party, and for the care and support and maintenance of the first party.

"Now, therefore, it is hereby agreed that the first party is indebted to the second party in the sum of eleven thousand dollars ($11,000.00) for services rendered, and that the second party shall continue to care for and support and maintain the first party during the lifetime of the first party.　That this agreement shall not in any way affect the operation of the will heretofore made and executed by the first party as to any property of which the first party may die the owner, after the payment of all lawful debts against the estate of the said first party, including the payment of this debt which includes the care and maintenance of the first party during her last sickness."

The judgment rendered in favor of Helen L. Webster was on that contract.

1.　The first question argued by Mahlon Camp is that the contract was without consideration and was unreasonable, unconscionable, and void.　The validity of contracts for services between persons holding a family relation to each other has been recognized in a number of instances by this court.　(*Ayres v. Hull,* 5 Kan. 419 ; *Greenwell v. Greenwell,* 28 Kan. 675 ; *Ensey, Ex'r v. Hines,* 30 Kan. 704, 2 Pac. 861 ; *Wyley v. Bull,* 41 Kan. 206, 20 Pac. 855 ; *Story v. McCormick,* 70 Kan. 323, 333, 78 Pac. 819 ; *Lowe v. Weaver,* 89 Kan. 443, 131 Pac. 142 ; *Engelbrecht v. Herrington,* 101 Kan. 720, 723, 172 Pac. 715.)　Such contracts have been enforced against the estates of persons who had agreed to make payments, by allowing as claims against the estates compensation for the services rendered. (*Griffith v. Robertson,* 73 Kan. 666, 85 Pac. 748 ; *Herry v. Reed,* 80 Kan. 380, 102 Pac. 846 ; *Dubbs v. Haworth,* 102 Kan. 603, 171 Pac. 624.)　Recovery on such contracts has been had directly against the party for whom the service was rendered. (*Shane v. Smith,* 37 Kan. 55, 14 Pac. 477 ; *Longhofer v. Herbel,* 83 Kan. 278, 111 Pac. 483.)　Specific performance of such agreements has been compelled.　(*Anderson v. Anderson,* 75 Kan. 117, 88 Pac. 743 ; *Smith v. Cameron,* 92 Kan. 652, 141 Pac. 596 ; *Harris v. Morrison,* 100 Kan. 157, 162, 163 Pac. 1062.) The trial court found as a conclusion of law that the contract

was a valid and legal contract, and this court cannot agree with Mahlon Camp that the contract was without consideration, or was unreasonable, unconscionable, or void. The amount to be paid for the service that was actually afterward rendered may seem large, but it must be remembered that the period of future service might have been long and that compensation for long years of service prior to the time of making the contract was included within the $11,000.

2. The other and principal question argued is that the contract is void because it operates to deprive Mahlon Camp of the one-half interest in his wife's property which the law says she cannot by deed or will, without his consent, prevent her husband, Mahlon Camp, from inheriting at her death.

The law does not deprive the owner of property from making contracts and incurring obligations the performance of which, after the death of the maker, may be enforced as against his estate. The only exception to this rule is that found in the homestead and exemption statutes of this state. The contract was a valid and binding one, and the debt created thereby was a lawful claim against the estate of Mary J. Camp, payment of which can be enforced in the same manner as the payment of any other claim against the estate, although the payment of the claim may exhaust all the assets of the estate.

The judgment is affirmed.